UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARK DUANE THOMPSON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>Defendant. | Case No. C14-843-TSZ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Mark Duane Thompson seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications.  He contends the ALJ erred by (1) failing to recognize his foot deformity as a severe impairment; (2) improperly discounting his credibility; (3) rejecting the medical opinions of two doctors; and (4) improperly assessing his RFC.  Dkt. 13.  As discussed below, the Court recommends the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

**BACKGROUND**

Mr. Thompson is currently 55 years old, has at least a high school education, and has worked as a cook, bartender, waiter, and fast food manager.  Tr. 23-34, 37; Dkt. 13 at 3.  On March 17, 2011, he applied for benefits, alleging disability as of May 1, 2008.  Tr. 11.  His

REPORT AND RECOMMENDATION - 1

applications were denied initially and on reconsideration. *Id*. The ALJ conducted a hearing on June 13, 2012, finding Mr. Thompson not disabled. Tr. 25. As the Appeals Council denied Mr. Thompson's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found Mr. Thompson had not engaged in substantial gainful activity since the amended alleged onset date; he had severe impairments of major depressive disorder, bipolar I disorder, panic disorder, alcohol dependence in remission, and chronic cocaine dependence; and these impairments did not meet or equal the requirements of a listed impairment.[2] Tr. 13-16. The ALJ found Mr. Thompson had the residual functional capacity to perform a full range of work at all exertional levels, but that he could only perform work in a low stress environment in which there were minimal changes in setting, and in which contact with coworkers, supervisors, and the public would be no more than occasional. Tr. 18. The ALJ found Mr. Thompson was unable to perform his past work, but could perform jobs that exist in significant numbers in the national economy. Tr. 23-24. The ALJ therefore concluded that Mr. Thompson was not disabled. Tr. 25.

## DISCUSSION

**A.    The ALJ Did Not Err at Step Two**

At step two, the ALJ found Mr. Thompson's medical record did not establish any severe impairment related to his feet, and that any chronic pain he experienced had been observed to be controlled with ibuprofen. Tr. 15. Mr. Thompson contends the ALJ should have found his foot deformity was a severe impairment. Dkt. 13 at 11, 13.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

At step two, Mr. Thompson has the burden of proof to show that (1) he has medically determinable impairments; and (2) his medically determinable impairments are severe. *See Bowen v. Yuckert*, 482 U.S. 137, 145, (1987); 20 C.F.R. § 404.1520(c). An impairment is medically determinable if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1508. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520; 404.1521. "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b).

Mr. Thompson contends the ALJ ignored medical evidence of a severely limiting foot deformity. Dkt. 13 at 11. He contends that if the evidence were credited as true, he would be limited to sedentary work at best. *Id.* Mr. Thompson points to evidence indicating he had foot pain in March, 2010, and then foot pain associated with a foot injury beginning in or around May, 2010. Tr. 428, 585. In August 2010, pending results of an X-ray, Mr. Thompson was provisionally diagnosed with foot pain and likely needing orthotic shoes. Tr. 395. The next month, a podiatrist examining his X-ray noted he had "increase 1st IM angle, osseous eminence at medial 1st met head with abducted hallux," and assessed "left foot pain with bunion." Tr. 393. Mr. Thompson complained of foot or ankle pain on a number of other occasions. *See* Tr. 396, 736, 747. Between January and November 2011, his ankle was noted to be symptomatic but stable, and he was instructed to continue using orthotics. Tr. 896, 971, 1140. In April 2011, Mr. Thompson reported his feet limit his standing to thirty minutes. Tr. 318. At his June 2012 hearing, Mr. Thompson testified he cannot stand more than twenty minutes. Tr. 45. In August 2012, Dr. Johnny Alayon, D.P.M., opined Mr. Thompson should limit his ambulation and

REPORT AND RECOMMENDATION - 3

standing "to tolerance." Tr. 1168.

On this record, the Court cannot say the ALJ improperly interpreted the evidence to suggest Mr. Thompson's foot impairment was not severe. Mr. Thompson points to no objective medical evidence that his foot/ankle impairment had more than a minimal effect on his ability to work or that it has prevented him from engaging in basic work activities. But even if the ALJ erred, Mr. Thompson has not shown harm. He fails to explain—and the medical evidence does not clarify—how his symptoms would result in any specific work-related limitations. Even the medical source statement from Dr. Alayon is non-specific, limiting Mr. Thompson's standing and ambulation "to tolerance." Tr. 1168. The Court is not aware of any objective medical opinions suggesting Mr. Thompson is limited to sedentary work because of his feet, as Mr. Thompson suggests. As Mr. Thompson has failed to show reversible error at step two, the Court recommends affirming the ALJ's step two findings.

**B.     The ALJ's Adverse Credibility Determination Should Be Affirmed**

Mr. Thompson also contends the ALJ erred in finding him not fully credible. Dkt. 13 at 13-16. Where, as here, there is no evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

**1.     *Activities of Daily Living***

The ALJ discounted Mr. Thompson's credibility because she found his allegations of severely limiting symptoms inconsistent with his daily activities. Tr. 19. Specifically, the ALJ found that, despite Mr. Thompson's allegations of social isolation, he attended multiple family gatherings. Tr. 19. She also found that, despite testifying he had difficulty concentrating, maintaining attention, and he could read for no more than five to ten minutes at a time, Mr.

REPORT AND RECOMMENDATION - 4

Thompson reported reading for a half hour several times per week, had been observed reading longer, and also reported watching television.  Tr. 18-19.  Despite stating he left his apartment once per week, he reported going to the VA and going grocery shopping twice per week, going to restaurants, and attending other local public events.  Tr. 19.

The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (*quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  However, a claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony"; or that are transferable to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284  n.7 (9th Cir. 1996); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility").  Mr. Thompson argues that "the issue is whether he can work."  Dkt. 13 at 15.  But this statement ignores the fact that Mr. Thompson's activities contradict his testimony.  It was not unreasonable for the ALJ to find Mr. Thompson's daily activities inconsistent with his testimony.  *See* Tr. 40, 44, 52, 316, 760, 770, 798, 823, 834, 899, 902, 1091, 1113, 1134.

### 2. *Inconsistent Statements*

The ALJ also discounted Mr. Thompson's credibility because he made inconsistent statements about substance use and suicidal thoughts.  Tr. 21-22.  Mr. Thompson concedes he made inconsistent statements, but argues that whether or not he drank alcohol is irrelevant

REPORT AND RECOMMENDATION - 5

because his alcohol dependence was in remission. Dkt. 13 at 16. Mr. Thompson argues further that his reporting in fact shows he is honest. *Id*. Mr. Thompson's arguments demonstrate a misapprehension for the credibility determination process. In assessing a claimant's credibility, an ALJ may consider the claimant's reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, daily activities, work record, and testimony from physicians and third parties. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ provided other unchallenged examples of Mr. Thompson's inconsistent statements, which are clear and convincing and supported by substantial evidence.[3] Accordingly, the Court cannot say the ALJ erred in discrediting Mr. Thompson's allegations on this basis.

### 3. *Improved Health*

Mr. Thompson also challenges the ALJ's finding that his allegations of severely limiting psychiatric symptoms were inconsistent with indications of improvement in the medical record. Dkt. 13 at 16 (*citing* Tr. 20). Mr. Thompson argues he testified that his symptoms have become worse since he became clean and sober. Dkt. 13 at 16 (*citing* Tr. 43). Though the assertion supports the ALJ's finding that Mr. Thompson alleges he has severely limiting psychiatric symptoms, it does nothing to refute the ALJ's finding that the medical record does not support Mr. Thompson's allegations. Mr. Thompson does not shown by objective medical evidence that his symptoms did not improve. Rather, he asserts, without citation to the record, that the medical evidence does not support the ALJ's assertions. Dkt. 13 at 16. In doing so he ignores the ALJ's

---

[3] For example, the ALJ noted inconsistencies in Mr. Thompson's explanations for why he no longer drives. *See* Tr. 20, 316, 595, 846. The ALJ also noted contradictory reporting relating to Mr. Thompson's video game habits. *See*, *e.g*., Tr. 20, 51 (testifying he had not played video games for "a few years"), 903 (reporting he stays home and watches television and plays video games); see also 601, 712, 724, 769, 829.

reference to his medical record, wherein Mr. Thompson's medical providers observed stable mood, no suicidal ideation, and positive reactions to group treatment.[4]  Tr. 21 (*citing* Tr. 752-53). Accordingly, the Court cannot say the ALJ erred in concluding that his allegations of severely limiting psychiatric symptoms were inconsistent with the medical record.

### 4. *Insufficient Medical Evidence*

The ALJ also discounted Mr. Thompson's opinion because his alleged physical limitations relating to standing, walking, and lifting were inconsistent with his "minimal and mild objective findings." Tr. 15, 20.  In response, Mr. Thompson argues "the ALJ misunderstands the objective evidence of Mr. Thompson's foot problems." Dkt. 13. At 15.  The argument is unpersuasive.  As the Court discussed above, the ALJ did not err in finding his foot problems were non-severe.  As Mr. Thompson does not address the medical records diagnosing foot pain symptoms but assessing no specific work-related limitations, he has failed to demonstrate the ALJ erred in finding these physical limitations were "minimal and mild."

But even assuming the ALJ erred as Mr. Thompson argues, he has not established harmful error.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason, among other reasons, to discount a claimant's credibility is at most harmless error if the other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall credibility determination). Accordingly, the Court recommends affirming the ALJ's credibility finding.

**C.     The ALJ Did Not Err in Evaluating the Medical Opinion Evidence**

---

[4] Specifically, one provider noted "Vet appears to be benefitting from the group and making good use of the feedback.  He presents as self-motivated as evidenced by attendance, participation, UDAS's and self-report.  Protective factors include:  Believes Tx is helping, remaining clean and sober, compliant with current treatment plan, engaging in group support, trying to build social support outside of the VA. No sign of increased risk of potential harm to self or others." Tr. 752-53.

REPORT AND RECOMMENDATION - 7

Mr. Thompson next argues the ALJ erred in discounting the opinions of examining doctors Timothy Bondurant, M.D., and Sachiko Yari-Doty, M.D.  When a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ may reject the opinion only for "clear and convincing" reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1988).  The Court may set aside the ALJ's decision if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).

### 1.     *Timothy Bondurant, M.D.*

Mr. Thompson challenges the ALJ's rejection of the December 2010 opinion of his treating psychiatrist, Dr. Bondurant.  Dr. Bondurant opined Mr. Thompson's symptoms of isolation, frequent suicidal ideation, depression, anhedonia, rapid speech, and irritability had marked effects on his ability to work.  Tr. 1159.  Based on these symptoms, the doctor opined Mr. Thompson would have severe limitations in his ability to interact with coworkers, supervisors, and the public; respond appropriately to and tolerate the pressures and expectations of a normal work setting; and maintain appropriate behavior in a work setting.  Tr. 1161.  Dr. Bondurant also opined Mr. Thompson would have marked limitations in his ability to provide self-care, and difficulty maintaining an ongoing job over the long term.  *Id.*

The ALJ assigned Dr. Bondurant's opinion "little weight" because the findings were inconsistent with Mr. Thompson's daily activities, "including his ability to engage with new groups and strangers." Tr. 23.  Mr. Thompson contends the ALJ erred because attending weekly group therapy meetings is different from dealing with people in the work setting, and because if he had been unable to participate in his mental health treatment, "the ALJ would likely have held this against him on the basis that he was non-compliance with treatment." Dkt. 13 at 9.  The

argument fails to address the ALJ's reasoning.  The ALJ found the doctor's opinion that Mr. Thompson was unable to relate appropriately to others was contradicted by reports that he had pleasant or productive interactions in group therapy.  *See* Tr. 23.  On this record, the Court cannot conclude Mr. Thompson's interactions during his group therapy sessions were indicative of someone with severe social functional limitations.  Accordingly, Mr. Thompson has not shown the ALJ erred.

      Additionally, the ALJ rejected the doctor's opinion because he did not explain the basis for his limitations.  Mr. Thompson contends the ALJ erred because Dr. Bondurant had been treating him for years, and his opinions were based on "his own clinical examinations of his patient, the longitudinal presentation of Mr. Thompson, as well as the treatment notes from the other members of the VA treatment team." Dkt. 13 at 9.  But Mr. Thompson fails to proffer facts demonstrating the opinion and limitations are based on objective findings, and Dr. Bondurant's opinion is void of any.[5]  *See* Tr. 1158-63.  As the ALJ correctly notes, the doctor did not explain how, in the same opinion, he assessed some severe social limitations, some marked social limitations, and also opined Mr. Thompson "minimally would be able to do menial stuff," all while listing the same symptoms as the basis for his opinions.[6]  Tr. 23 (*citing* Tr. 1159, 1161).  A treating physician's opinion need not be given controlling weight when it is "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings." *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

---

[5] Dr. Bondurant's treatment notes, taken the same day, indicate Mr. Thompson reported his depression occurs "at times," and he "isolates excessively." Tr. 915.  Dr. Bondurant's objective findings note "AOx3, in NAD, rapid speech and nl cadence but not pressured, no psychomotor agitation or retardation, mood and affect euthymic with mild anxiety, denies SI/HI/AVH, no psychosis, memory intact, goal-directed." *Id*.  There is no reference to historical treatment findings.

[6] Dr. Bondurant identified symptoms of isolation (not observed), depression, irritability, frequent frustration intolerance with suicidal ideation, and difficulties relating.  Tr. 1159, 1161.

REPORT AND RECOMMENDATION - 9

The ALJ also rejected Dr. Bondurant's opinion because it did not account for Mr. Thompson's progress in treatment. Tr. 23. This finding is not challenged. The Court finds this was a proper basis upon which to discredit Dr. Bondurant's 2010 opinion. The contradiction between the doctor's opined social limitations, and other, later evidence suggesting Mr. Thompson responded favorably to treatment, was a valid reason for rejecting the opinion.

**2.     *Sachiko Yari-Doty, M.D.***

Dr. Yari-Doty performed a Psychological/Psychiatric Evaluation of Mr. Thompson in November 2011. Tr. 1164-67. The ALJ gave several reasons for assigning the doctor's opinions "little weight." First, the ALJ noted the doctor relied heavily on Mr. Thompson's non-credible statements. Tr. 22. "An ALJ may reject a ... physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ noted the doctor did not observe Mr. Thompson's withdrawal/isolation and racing thoughts symptoms, but nevertheless stated Mr. Thompson "isolates at home and watches TV," and opined his racing thoughts interfere with his ability to sustain focus and concentration. Tr. 22-23 (*citing* Tr. 1164-65). In addition, the ALJ observed that the doctor's notes regarding Mr. Thompson's isolating and withdrawing behaviors were inconsistent with his abilities to engage with groups and strangers in his therapy sessions. Tr. 21-22, 1166-67. Similarly, the ALJ found the doctor's findings regarding an inability to focus and concentrate were undermined by her observations that Mr. Thompson demonstrated good attention and concentration and could perform serial sevens. Id. For the reasons discussed above, Mr. Thompson's repeated argument that "participating in group therapy is not tantamount to work" is unavailing. *See* Dkt. 13 at 10. Additionally, whether or not the doctor could observe racing thoughts is of no moment, where, as here, the limitations flowing from Mr. Thompson's racing thoughts—inability to concentrate—are otherwise negated by the doctor's observations that he has good attention and concentration. *See*

REPORT AND RECOMMENDATION - 10

Dkt. 13 at 10-11. Accordingly, the Court finds the ALJ provided valid reasons to reject Dr. Yari-Doty's opinion.

**D.     The ALJ's RFC Should Be Affirmed**

Finally, Mr. Thompson contends the ALJ erred in evaluating his RFC because the ALJ "failed to consider" the opinions of Dr. Bondurant and Dr. Yari-Doty, and misunderstood Mr. Thompson's foot deformity. Dkt. 13 at 16-17. As this Court has already addressed, the ALJ properly considered the doctors' opinions and rejected them; similarly, the ALJ properly found Mr. Thompson's foot symptoms not severe. The ALJ was not required to account for limitations or impairments she had already properly rejected. *Bayliss*, 427 F.3d at 1217-18. Accordingly, Mr. Thompson's argument that the limitations assessed by these two doctors "would support a finding of disability under SSR 85-15" is without basis. Dkt. 13 at 17. On this record, Mr. Thompson has not demonstrated his RFC does not account for his impairments, and the Court cannot determine that Mr. Thompsons' RFC, which limits him to work activity in a low-stress environment with minimal setting changes and no more than occasional contact with coworkers, supervisors, and the public, is not supported by the evidence. Thus, the Court recommends affirming the ALJ's RFC determination.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision should be **AFFIRMED** and recommends the case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **November 6, 2014**. If no objections are filed, the matter will be ready for the Court's consideration on **November 7, 2014**. If objections are filed, any response is due within 14 days after being served with the

1 objections. A party filing an objection must note the matter for the Court's consideration 14

2 days from the date the objection is filed and served. Objections and responses shall not exceed

3 twelve pages. The failure to timely object may affect the right to appeal.

4     DATED this 23rd day of October, 2014.

                                       BRIAN A. TSUCHIDA
                                       United States Magistrate Judge

REPORT AND RECOMMENDATION - 12